# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

J.H. LANDWORKS, LLC,

      Plaintiffs

v.

T. LARIVIERE EQUIPMENT &
EXCAVATION, INC., AND
CINCINNATI INSURANCE
COMPANY,

      Defendants.

Case No. 2:11-CV-00488-MHW

**MEMORANDUM DECISION ON
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT**

      Pending before the Court is a Motion for Partial Summary Judgment (Dkt. 27), filed by Defendant T. LaRiviere Equipment & Excavation, Inc. ("TLE").  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Having reviewed the parties' respective affidavits and briefing related to this motion (Dkts. 27-29, 31-35, & 37), and having entertained oral argument on September 21, 2012, the Court hereby enters the following Order.

## BACKGROUND

      This case involves a claim for a violation of the Miller Act, 40 U.S.C. § 3131(b), and

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT, Page 1**

related state law claims for breach of contract, unjust enrichment, and fraud.  It arises from a construction project, commonly known as the Priest Lakes Bridges Project ("the Project"), funded under the American Recovery and Reinvestment Act.  The Project involved the replacement or construction of several bridges over creeks located in Bonner County, Idaho, within the boundary of the Idaho Panhandle National Forest.  (First Amended Complaint, ¶ 7, Dkt. 22).  TLE served as the general contractor on the Project, and in March of 2010, it entered into an agreement with the United States Forest Service regarding the scope of the work to be undertaken. *Id.*

Several months later, in June of 2010, TLE contacted the Plaintiff, J. H. Landworks, LLC (hereafter "J.H. Landworks"), to complete certain excavation work that needed to be done under the Prime Contract.  (*Id.,* ¶ 10).  According to the Amended Complaint, TLE gave J.H. Landworks an oral description of the work to be completed and asked JHL if it thought it could complete the work for a fixed price of $190,000.00.   J.H. Landworks asserts that TLE specifically represented that it had allocated sufficient monies under its Prime Contract with the Forest Service so that it could pay J.H. Landworks this amount. (*Id.,* ¶¶ 11-12.) J.H. Landworks further asserts that under the terms of the initial oral agreement it agreed to provide the requested labor and materials for the total price of $190,000 suggested by TLE. (*Id.,* ¶ 12). Of this total price, the parties estimated that approximately $30,000 would be material costs that TLE would pay directly upon the submission of invoices from JHL.  (*Id.,* ¶ 12).   According to the Amended Complaint, JHL thus considered the base price of the

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, Page 2**

contract to be $160,000, with the understanding that material costs would be paid directly by TLE.  *Id.*   J.H. Landworks further asserts that although it undertook work on the project beginning on July 27, 2010, TLE had not paid any of its material costs by September of 2010, including certain amounts owed to subcontractors or suppliers.  *(Id.,* at ¶¶ 13-14).  J.H. Landworks asserts that TLE then requested that it pay those material costs directly, so as not to delay the completion of the Project.  *Id.*  J.H. Landworks agreed to do so, and incurred some $32,845.75 in expenses in connection with the purchase of materials.  *(Id.* at ¶ 15-16). Thereafter, J.H. Landworks alleges that there were oral modifications to the contract that increased the scope of work and therefore, the total price.  *(Id.,* at ¶¶ 15-16).[1]

The excavation project proceeded forward and by October 18, 2010, J.H. Landworks had substantially completed the bulk of the work, though some additional work did remain. (Plaintiff's Statement of Undisputed Material Facts, ¶ 2, Dkt. 31; Affidavit of Jay Huff at ¶¶ 2-3).  The dispute at issue in the present motion arises from certain events that occurred on October 18, 2010 or in the days immediately following. According Jay Huff, the owner of J.H. Landworks, as of October 18, 2010, TLE had not paid J.H. Landworks for the any of the work it had undertaken from July 27, 2010 up through October 18, 2010.  (Huff Aff. ⟋ 4). Accordingly, on that day, Jay Huff telephoned Thomas LaRiviere (the owner of TLE) to

---

[1]Since the factual discussion in this paragraph was taken largely from Plaintiff's unverified Amended Complaint, the Court is including it for background purposes only.  From this point forward, the discussion will focus on facts contained in the parties respective affidavits which are relevant to the Motion for Summary Judgment.

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, Page 3**

request that payment be made.  According to Mr. Huff, he told Mr. LaRiviere that he wanted

TLE to make an initial payment of $200,000, though he expected his final billing to come

in above that amount.  (*Id.,* ¶ 5).  According to Mr. Huff, Mr. LaRiviere told him that TLE

had not yet been paid by the Forest Service, but that he could make an initial payment of

$100,000.  *Id.*  Mr. Huff also asserts that Mr. LaRiviere told him he would pay the balance

owed to J.H. Landworks upon final payment from the Forest Service.  *Id.*  Mr. Huff asserts

that he agreed to accept the $100,000 in reliance on Mr. LaRiviere's representation about the

status of the payment from the Forest Service and upon Mr. LaRiviere's promise to pay the

remaining balance at a later date.  *Id.,* ¶¶ 5-6.

Thereafter, Mr. Huff asked his wife, Crystal Huff, to go to TLE's offices to pick up

the $100,000 check so that they could deposit it and begin paying subcontractors and material

suppliers.  (*Id.,* ¶ 7).  When Ms. Huff arrived at TLE's offices, she was given the  check and

a form entitled: "Interim Lien/Claim Waiver," and told to have Jay Huff sign the waiver form

and return it to the TLE offices.  (*Id.,* ¶ 8; Crystal Huff Aff. ¶ 3).

The waiver form given to Ms. Huff read as follows:

### INTERIM CLAIM/LIEN WAIVER

In consideration of the payment of $_____ by <u>T. LARIVIERE
EQUIPMENT & EXCAVATION, INC.,</u> (the "Payor") to the undersigned, the
undersigned hereby waives, releases, and relinquishes any and all claims or rights of
lien or bond claim which the undersigned may now have by reason of any labor,
materials, supplies, equipment, or work furnished to the construction project
commonly known as <u>PRIEST LAKE BRIDGES AG-82131-C-100115</u> (the "Project")
and located at <u>PRIEST LAKE, IDAHO.</u>

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT, Page 4**

It is expressly understood that this waiver had been given prior to receipt of payment at the request of an for the convenience of the Payor and is, therefore, contingent upon receipt in due course of payment in full of the amount set forth above.  This waiver applies to all labor, materials, supplies, equipment and work furnished to date.

Further, the undersigned, in consideration of the payment of said sum, does hereby release and forever discharge USDA FOREST SERVICE (the "Owner"), the Payor, Payor's surety, and their respective successors, affiliates, agents and assigns, and all of their respective subsidiaries, general partners, lenders, and employees from any and all claims, demands, suits, causes of action of whatever kind or nature, whether based on contract, tort or otherwise, which now exist or which may arise out of, or which are in any way connected to the construction of the Project, except for those claims arising out of any labor, material, supplies or equipment furnished after the date of this waiver, and/or those claims which are specifically reserved below.

(FAC, Exh. B, Dkt. 22-3).  The parties agree that the amount of payment was left blank when the form was given to Crystal Huff. (Defendant's Reply Brief, pp. 3-5, Dkt. 37).

The parties appear to agree that the effect of the waiver would be to discharge all claims to money owed for work completed as of October 18, 2010.  However, they disagree heatedly as to the *amount* that was intended to be released.  As indicated, Mr. Huff's recollection of his discussions with Mr. LaRiviere was that the $100,000 check was intended to be a partial payment only.   Crystal Huff also testified that she did not recollect any discussion about the check being a final payment when she went to TLE's offices to pick it up.  (Crystal Huff Affidavit at ¶ 3).  Ms. Huff further testified that immediately after picking up the check, she went to the bank and deposited it, and only thereafter returned home and gave the waiver form to Jay Huff.  (*Id., ¶* 4).

According to Mr. Huff, when he initially looked at the waiver form, he believed it was intended only to release any claim he might have had to the $100,000 that was being paid

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, Page 5**

that day, not to additional amounts owed.  (Jay Huff Affidavit ¶ 8-9).  He therefore took the form to the bank to have it notarized, but when he did so, he read it more carefully and realized that the language in the waiver did not comport with his initial reading of it, or with his understanding of the agreement he had with Mr. LaRiviere.  (*Id.,* ¶ 9). Accordingly, he signed and notarized the form and returned it to TLE, but intentionally left the payment line blank.  (*Id.,* ¶ 9-10).  Some time later, an employee of TLE filled in the blank payment line to reflect the $100,000 that TLE had remitted to J.H. Landworks on October 18, 2010. (LaRiviere depo., pp. 98-99, Exh. 1, to Ealy Affidavit, Dkt. 35).

Mr. LaRiviere testified as to a very different understanding of how events transpired. Specifically, he testified that he recalled telling his wife (who was the one who apparently accepted the signed waiver form from Mr. Huff) that the $100,000 check was intended to be a final, not a partial, payment. He also testified that his wife subsequently informed him that she had explained this to Mr. Huff. (La Riviere depo., p. 97-100). Mr. LaRiviere also testified that it was his understanding that Mr. Huff had the waiver form signed and notarized *before* receiving the check, and that Mrs. La Riviere filled in the $100,000 amount *in front of* Mr. Huff, with his knowledge, before handing him the check.  (*Id.,* p. 99-100).[1]

After the project was completed, J.H. Landworks attempted to obtain payment of

---

[1]Though Mr. LaRiviere's testimony may contain some hearsay statements, neither party objected to its introduction and his deposition was actually submitted by Plaintiff.  Nevertheless, these statements are included in the Court's factual discussion for background purposes only and are not material to the ruling below.

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, Page 6**

additional moneys it believed it was owed--some $106,894.75, for work done both before and after October 18, 2010. Plaintiff alleges that over the following months, Mr. LaRiviere made further representations that additional payments would be forthcoming. When they did not, J.H. Landworks made a claim against the project bond for the amount it believed it was owed.   This claim was denied by the surety, Cincinnati Insurance Company.  The lawsuit and this motion followed.

## LEGAL STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a)**.** "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(a)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 7**

*See Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible. *Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir.1992).

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 8**

## ANALYSIS

**A.    Whether an Enforceable Contract was Created.**

The core issue in this motion can be stated in the following manner: what was the legal effect of TLE's act of filling in the $100,000 payment amount after the signed, blank form had been delivered to its offices?  In answering this question, the Court assumes, as it must on a motion for summary judgment, that this was done after the fact, outside of Mr. Huff's presence.  For purposes of this motion, the Court must also accept as true Mr. Huff's assertion that he left the amount blank intentionally, because he had a different understanding of what the total amount of payment was to be.

TLE contends that by its conduct of signing and notarizing the form and cashing the check, J.H. Landworks granted TLE the implied authority to complete the signed instrument, and that by filling in the $100,000 amount, TLE was "merely completing the document by writing in the amount actually paid."  (Defendant's Reply Brief at p. 3, Dkt. 37).  In support of this argument, TLE relies on a number of cases from other jurisdictions, which hold that a party receiving a signed instrument containing blanks "ha[s] the requisite authority to fill in a blank spot on a signed and returned written instrument if the alteration does not effect a material change in the duties of the parties."  (TLE's Reply Brief, p. 4).  Though the issue is one of first impression in Idaho, and though it was not raised by TLE until its reply brief, the Court finds that the doctrine of implied authority provides the most natural and logical means of analyzing the issues in this motion.

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 9**

The Court can locate no Idaho cases addressing the scope of a party's implied authority fill in blanks on a signed contract after signature and delivery. "Where a state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Strong v. Unumprovident Corp.,* 393 F.Supp.2d 1012, 1018 (D. Idaho 2005). Idaho courts routinely rely upon cases from other jurisdictions to decide issues of first impression involving matters of contract formation or interpretation *See, e.g. Farmers Ins. Co. Of Idaho v. Talbot,* 133 Idaho 428, 987 P.2d 1043, 1047-48 (1999); *Freeman & Co. v. Bolt,* 132 Idaho 152, 968 P.2d 247 (Ct. App. 1998); *Parker v. Boise Telco Federal Credit Union,* 129 Idaho 248, 923 P.3d 493 (Ct. App. 1996). Therefore, this Court will do the same.

The Court has reviewed the cases provided by TLE on the subject of implied authority, and has conducted its own independent research as well. The authorities the Court has reviewed suggest that Mr. Huff's decision to leave the amount blank, though perhaps not the most prudent course of action considering the turn of events, did *not* give TLE the authority to write in an amount that differed from the actual agreement the parties made. Outside the context of negotiable instruments, where the rights of third parties may be implicated, the cases the Court has reviewed uniformly suggest that the only authority that exists when a party delivers a contract containing blanks is the implied authority to fill in the blanks *in the manner contemplated by the parties.*

The most recent case the Court has been able to locate, *Advantage Funding Corp. v.*

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 10**

*Mid Tennessee Mfg Co, Inc.* 2000 WL 64188 (Tenn. Ct. App. 2000), is an unpublished

opinion, but it does contain an extensive discussion of the issue.  In that case, the Court

explained:

> One of the most basic rules of contract formation is that a person who signs a written document embodying an agreement with another party is bound by the terms of the signed agreement. This is true even if the person signing the document did not read what he or she signed. . . .If, however, the document does not embody an enforceable agreement because material terms have been omitted, the courts must decide whether the missing terms can be supplied by operation of law or whether the parties simply never made a binding agreement. At this point, the focus of the inquiry devolves upon who supplies the additional terms, whether the additional terms are expressly or impliedly authorized, and, if applicable, whether enforcing the agreement as construed will affect the rights of third parties.
>
> For example, a person rightfully possessing a signed document containing blanks has the implied authority to fill in these blanks in such a way "as was anticipated by [the signer]*." Holman v. Higgins*, 134 Tenn. 387, 394, 183 S.W. 1008, 1010 (1916); *see also First Nat'l Bank v. Hull,* 204 N.W.2d 90, 94 (Neb.1973). By filing in the blanks in a document in this way, the person deemed acting for the person who signed the document merely causes the completed document "to speak in accord with its intended purpose and use." *Holman v. Higgins*, 134 Tenn. at 391, 183 S.W. at 1009. In this circumstance, filling in the blanks after the document was signed completes a contract that the law will enforce.
>
> *A slightly different rule applies when the party filling in the blanks is the other contracting party. The fact that the document contains blanks does not, by itself, invalidate the agreement,* see *Sidwell Oil & Gas Co. v. Loyd,* 630 P.2d 1107, 1113 (Kan.1981), *even if the agreement is a guarantee agreement. See, e.g., North Carolina Nat'l Bank v. Corbett, 156 S.E.2d 835, 837 (N.C.1967). However, if the party fills in the blanks in an unauthorized manner, the person who signed the document containing the blanks may avoid the agreement. See Sidwell Oil & Gas v. Loyd, 630 P.2d at 1113. These insertions will not bind the signer if the instrument, as completed, does not reflect the parties' true agreement.*)

2000 W.L. 64118 at *3-4 (emphases added). Similarly, in *Sidwell Oil & Gas Co., Inc. v.*

*Lloyd,* 230 Kan. 77, 630 P.2d 1107 (Kan. 1981), the Kansas Supreme Court held that

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 11**

insertions must be in accordance with the parties' agreement and the contract may be voided if there was evidence that blanks were filled in as to material parts in an unauthorized manner. *Id.,* 630 P.2d at 1112-13. *See also Musser v. Zurcher,* 180 Neb. 882, 146 N.W.2d 559 (Nebraska 1966) (holding that leaving blanks in an instrument creates apparent authority in the receiver to fill in blanks in the way contemplated by the maker of the instrument.) A well-respected treatise makes much the same point, stating that "one who receives a signed contract containing blanks has implied authority to fill in blanks with appropriate words *in the absence of circumstances indicating a contrary intention."* Williston on Contracts § 75:19 (4th Ed) (emphasis added). All of these authorities indicate that delivering a signed instrument containing blanks does grant the other contracting party the authority to fill those blanks in, *but only to the extent that doing so conforms to the underlying agreement of the parties.* Simply put, a party may not be able to escape the legal effect of his contract simply because some items were left blank, but the law will not hold parties to agreements that they did actually not make.

Turning back to the evidence in this case, the Court finds that Plaintiffs have submitted evidence that tends to suggest that TLE's act of filling in the $100,000 amount on the waiver form did effect a material change in the duties of the parties. TLE, on the one hand, asserts that it did not fill in an arbitrary amount, but rather, that it simply wrote in the exact amount that was being paid to J.H. Landworks on the day the waiver form was signed. On the other hand, both Jay Huff and Crystal Huff testified that in their dealings with TLE

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 12**

on October 18, 2010, no one ever stated that the $100,000 check was contemplated as a final payment.  Indeed, Mr. Huff explained that he left the amount line on the waiver form blank specifically because he did *not* agree that the check he was receiving was to be a final payment.  (J. Huff Affidavit ¶¶ 8-9.)  Mr. Huff also explained that the conversation he had with Mr. LaRiviere on October 18, 2010 specifically contemplated an initial payment of $100,000, to be supplemented by a final payment when TLE was paid by the Forest Service.  (*Id.*, ¶ 5).  If Mr. Huff's version of events is correct, then the insertion by TLE did, in fact, materially alter the bargain the parties had previously struck.  Though TLE was free to fill in the blanks on the waiver form to conform to the agreement, there are clearly issues of fact as to what that agreement actually was.  Thus, the case is not one that is appropriate for summary judgment in favor of TLE.

This conclusion is consistent with general principles of Idaho contract law.  In the first place, Idaho follows the long-established rule that formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract.  *See, e.g. Thomas v. Thomas,* 150 Idaho 636, 249 P.3d 829 (2011); *Justad v. Ward,* 147 Idaho 509, 211 P.3d 118 (Idaho 2009).  Generally, the question of whether there has been a sufficient meeting of the minds to form a valid contract is a question for the trier of fact.  *Vanderford Co. Inc., v. Knudson,* 150 Idaho 664, 249 P.3d 857 (Idaho 2011). Moreover, price is considered a material term in the formation of any contract. *See, e.g. Thorn Springs Ranch, Inc. v. Smith,* 137 Idaho 480, 50 P.3d 975 (2002).  And, while Idaho does not allow

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 13**

parol evidence to contradict unambiguous terms of an integrated written contract, *Posey v. Ford Motor Credit Co.,* 141 Idaho 477, 111 P.3d 162 (Idaho Ct. App. 2005), the contract in question here did not contain an integration clause and was actually left blank by Mr. Huff prior to delivery.  Thus, the Court finds that this is a situation in which extrinsic evidence, such as Mr. Huff's testimony as to what his understanding of the agreement was, would be admissible.   All of these principles are consistent with the Court's holding that TLE's implied authority to fill in the blanks existed *only to the extent that it reflected the parties' actual agreement.*  What that agreement was is an issue of fact for the jury.

In light of the above ruling, the Court finds it unnecessary to address at this time certain arguments raised by Plaintiffs with respect to whether the waiver form is admissible and with respect to whether TLE engaged in fraudulent behavior. Whether or not the waiver form is admissible under F.R.E. 901(a) is an issue that can be addressed, if necessary, at trial or through pretrial motions in limine.   The Court also finds it unnecessary to address whether the facts are sufficient to show that TLE engaged in fraudulent behavior, though Plaintiff argued fraud as one means of overcoming the effect of the waiver.  TLE did not move for summary judgment on the fraud claim, and in light of the above ruling, it is not necessary for J.H. Landworks to prove that fraud existed in order to overcome the effect of the waiver. Rather, consistent with the authorities cited above, it may simply demonstrate that the waiver did not reflect the parties' true agreement.

## B. Accord and Satisfaction

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 14**

TLE also argues that the doctrine of accord and satisfaction entitles it to summary judgment.  The Court disagrees. In Idaho, a party claiming that his obligations have been released by operation of the doctrine of accord and satisfaction must prove the following elements: 1) that the obligor in good faith tendered an instrument to the obligee as full satisfaction of the claim; (2)  the amount of the claim was unliquidated or subject to a bona fide dispute; (3) the obligee obtained payment of the instrument; and (4) the instrument contained a conspicuous statement to the effect that it was tendered as full satisfaction of the claim.  *See, Watkins Co. v. LLC v. Storms,* 152 Idaho 531, 272 P.3d 503 (Idaho 2012).  With respect the fourth element, the statement that the instrument is being tendered in full satisfaction of the claim may be contained in an accompanying writing rather than in the instrument itself.  *See, e.g. Strother v. Strother,* 136 Idaho 864, 41 P.3d 750 (Idaho App. 2002) ("In order for acceptance of a check to create an accord and satisfaction, the notation on the check or an accompanying writing must express in plain, definite, and certain terms that the debtor is giving such check in full satisfaction of the debt and that acceptance thereof discharges the debt").

The Court finds that there are genuine issues of fact as to elements one and four, thus precluding summary judgment in favor of TLE.  As to element number four, Defendant has never asserted that the check itself contained a statement that it was being tendered in full satisfaction of Plaintiff's claim.  Nor does the waiver itself contain such a statement, though

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 15**

it could theoretically serve as an "accompanying writing." The waiver form does not refer to the $100,000 check, and space for the payment amount was left blank when it was provided to Crystal Huff. It is thus at least arguable that the waiver form was not intended to refer to the $100,000 check at all. On these facts, the Court cannot say that the waiver form constituted a "conspicuous statement" that the check was being tendered in full satisfaction of the claim. Finally, there are also factual issues as to element one, good faith, given Mr. Huff's testimony that he and Mr. LaRiviere had discussed the necessity of further payments on the very day that the waiver form was provided. Accordingly, Defendant is not entitled to summary judgment on the doctrine of accord and satisfaction.

## ORDER

For all the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. 27) is hereby DENIED.



DATED: October 5, 2012.

_____

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Page 16**